Beulah L. NEVILLE, Amended to Beulah L. Neville Garlinger, Appellee,

v.

AMERICAN BARGE LINE COMPANY, Amended to American Commercial Barge Line Company, Appellant.

No. 13012.

United States Court of Appeals Third Circuit.

Argued Dec. 11, 1959.

Decided Feb. 3, 1960.

Rehearing Denied April 12, 1960.

Biggs, Chief Judge, dissented from order denying rehearing.

Clyde A. Armstrong, Pittsburgh, Pa. (Thorp, Reed & Armstrong, Pittsburgh, Pa., on the brief), for appellant.

Hymen Schlesinger, Pittsburgh, Pa., for appellee.

Before KALODNER, STALEY and HASTIE, Circuit Judges.

HASTIE, Circuit Judge.

Pleading diversity of citizenship, appellee, a member of a ship's crew, has sued the shipowner on the civil side of the district court for money allegedly due for maintenance and cure over a period of years since a disabling shipboard injury. In addition, the complaint asserts that appellee is entitled to consequential damages said to have resulted from the failure of appellant to provide maintenance and cure after notice and demand for such assistance.

In 1950, while serving as a laundress on a river boat, appellee so severely injured two fingers of her left hand that they had to be amputated. Atrophy of muscles of the left arm and shoulder followed. A suit founded on this injury resulted in an award of maintenance and cure until December 4, 1951, the date the trial was concluded. Neville v. American Barge Line Co., D.C.W.D.Pa.1952, 105 F.Supp. 408. There was also a trial finding that "up to the date of the conclusion of the trial, December 4, 1951,

the libellant had not reached the point in her recovery where care and further treatment would not benefit her". 105 F.Supp. at page 411.

After the award in the first action no money was paid the injured woman for maintenance and cure owed after December 4, 1951. Accordingly, she filed the present suit. At the trial in November 1958 a jury awarded appellee $15,336. for maintenance and cure at an agreed rate of $6. per day from December 4, 1951 until the time of trial and $10,000. for consequential damage suffered as a result of the wrongful withholding of money owed for maintenance and cure. A motion for judgment notwithstanding the verdict or for a new trial was denied. This appeal followed.

■ We first consider the allowance of $15,336. for maintenance and cure for the entire period between the two trials. The principal question on this phase of the case is whether there was competent evidence justifying a conclusion that at the time of the 1958 trial appellee still had not achieved as complete a recovery as indicated treatment would provide.

Appellant relies upon medical evidence, including hospital records, indicating that at the conclusion of a period of hospitalization at a United States Public Health Service facility at Cleveland, Ohio, late in 1952, a maximum feasible cure had been accomplishd. There is also evidence of subsequent hospitalization at the Baltimore Marine Hospital in 1953 with terminal records indicating that further treatment would not improve the patient's condition. On the other hand, there is evidence of helpful treatment in 1957 and 1958. Physicians who examined appellee recently for the purpose of this litigation testified that part of her trouble was and had been "conversion hysteria", a neurosis directed toward the inability to use her left arm and hand, which could be treated successfully and required psychiatric care and rehabilitation over a period estimated at two years.

We have carefully considered all the medical testimony and the various questions raised concerning the competency of particular items. We are satisfied that there was sufficient competent testimony to go to the jury on the question when, if at all, appellee had reached a point of maximum cure. The court's instructions on this were clear and eminently fair.

■ Separately, appellant argues that it was error to allow maintenance and cure for a period from 1951 to 1954 when plaintiff was living with her husband who was regularly employed. But there was evidence that plaintiff had to borrow or otherwise obtain money for food and medicines from sources other than her husband. Moreover, on this point the court charged, with the consent of both parties, that "plaintiff may not recover for maintenance and cure without proof of reasonable expenses incurred or obligation created for such maintenance * * *." We find no error prejudicial to the defense in the court's handling of this question. On the entire record the allowance of the full sum of $15,336. for maintenance and cure must stand.

Different questions are raised by the award of $10,000. for damages said to have resulted from the wrongful withholding of money due appellee for maintenance and cure. At the trial the theory of this claim was stated to the court by counsel for appellee as follows:

"Dr. Zuck said that she should have been given psychotherapy at the time she was discharged from the Baltimore Marine Hospital in March or April of 1954, and had she been given such treatment, in his opinion she would have made recovery and been able to go back to work within two years, and that if she is given it now she will be able to return to gainful, useful work within two years from the present time; therefore, I am claiming for the period, loss of wages represented by the time she would have recovered, namely March or April of 1956 until the time when she may recover if treatment is instituted presently,

which will be two years from now, November of 1960."

Counsel also indicated that the claim included pain and suffering during whatever postponement of recovery had resulted from appellant's failure to provide maintenance and cure. The court submitted this theory of consequential damage to the jury, saying:

"If you find that the defendant failed in its obligation to give the plaintiff maintenance and cure, and as a consequence of her not having the money to which she was entitled, that her injury was prolonged, then we come to what I call the second cause of action. That is, in those instances the defendant must pay the damages consequent upon the prolongation of that illness or injury."

■ This court has held that such consequential damages are recoverable. Sims v. United States of America War Shipping Administration, 3 Cir., 1951, 186 F.2d 972. Accord, Murphy v. Light, 5 Cir., 1958, 257 F.2d 323. However, in the present case proof is lacking on an important point.

In this situation, as in the case of every other injury said to have resulted from a defendant's breach of duty owed a plaintiff, it must be proved as a fact that the wrong charged was a cause of the harm. Here, medical witnesses for appellee testified that records of prior treatment, supplemented by their own recent examination of appellee, disclosed that she was in need of and could have benefited greatly from psychotherapy at the end of 1953 when she was released from Baltimore Marine Hospital after a period of medical treatment there. Moreover, these witnesses expressed the opinion that two years of such psychiatric treatment, beginning in 1954, would have sufficed so to improve the condition and mobility of appellee's arm as to enable her to resume normal gainful employment. On this basis it is argued that the failure of appellant to supply money for maintenance and cure prevented appellee from obtaining this needed and prospectively curative treatment, and thus prolonged her physical suffering and her loss of earnings beyond the time in 1956 when she could have been restored to health and employability.

■ In these circumstances the question of causation is whether the failure to receive maintenance and cure payments was a cause of appellee's failure to obtain psychiatric treatment in 1954 and thereafter. We find nothing to show such a causal relationship. We have searched the record in vain for any evidence that appellee ever wanted or thought she needed psychiatric treatment.

The only indication that the psychiatric aspect of her case was in any way brought to appellee's attention appears in the record of her stay at the Baltimore Marine Hospital, which shows that she was sent to a staff psychiatrist "for psychiatric interview". That specialist found no present need for further psychiatric interview. However, he recommended that the patient seek psychiatric treatment elsewhere "if symptoms became severe". This qualified recommendation was conveyed to appellee. Nothing else concerning a possible psychiatric problem appears during the years of intermittent medical care which followed appellee's injury, until the examination by defense medical witnesses shortly before and preparatory to the present trial. Even if in 1954, and at all other proper times, the employer had paid appellee the full amount now found to have been owed under a continuing duty to provide money for maintenance and cure, there is nothing to indicate that she would have placed herself under the care of a psychiatrist. To the contrary, all indications are that the present confident assertion that psychotherapy would be a potentially curative procedure in this case expresses a recent discovery. Thus, we have no proof that appellant's conduct was even a *causa sine qua non* of appellee's failure to obtain psychotherapy.

■ If it be argued that appellant on its own initiative should have tendered

and proposed psychiatric care to appellee, here again the answer is that no suggestion of the need for or potential value of psychotherapy in appellee's case was brought to the attention of appellant until shortly before the trial of this case. In Graham v. Alcoa S.S. Co., 3 Cir., 1953, 201 F.2d 423, we pointed out that an employer as a layman may not be charged with wrongful failure to tender or make available a special type of treatment until the need therefor shall have been made reasonably apparent. In the Graham case and in the present case the disagreement of medical witnesses, even at the trial, concerning the need for the special treatment showed that the alleged need had not become apparent.

In these circumstances we think the evidence did not justify submitting the question of consequential damage to the jury and, therefore, judgment notwithstanding the verdict should have been entered for the defendant on this claim. Of course this does not affect the award of $15,336. for maintenance and cure, which shall stand.

We have also considered all of appellant's objections to the admission and exclusion of evidence, but find no reversible error.

The judgment will be affirmed in part and reversed in part in accordance with this opinion. Each party shall bear its own costs on this appeal.

### Sur Petition for Rehearing

Before BIGGS, Chief Judge, and KALODNER, STALEY and HASTIE, Circuit Judges.

### PER CURIAM.

The petition of appellee for rehearing has been fully considered and is hereby denied.

BIGGS, Chief Judge (dissenting).

I think this court is in error in concluding that the award of $10,000 made to Garlinger, the appellee seaman, by the court below must fall. By her present complaint Garlinger seeks damages because of alleged aggravation and prolongation of her disabilities arising out of a breach of duty by the defendant-appellant shipowner to furnish her continuing maintenance and cure. It must be pointed out that the court below, in a prior proceeding brought by Garlinger for maintenance and cure, granted her maintenance and cure up to December 4, 1951, and on December 5, 1951 found also that she had not reached that point in her recovery where further treatment would not benefit her.

The record demonstrates that Garlinger was in need of psychotherapy after December 4, 1951, and that it would have been possible to rehabilitate her through psychiatric treatment. The jury found this to be so and the court below and this court agree with that conclusion. So long as psychotherapy was required and psychotherapy was available the shipowner was required to furnish it. The duty to furnish maintenance and cure is an absolute one. This duty cannot and should not be limited by traditional tort or contract concepts.

The case at bar is ruled by Cortes v. Baltimore Insular Line, 1932, 287 U.S. 367, 371, 53 S.Ct. 173, 174, 77 L.Ed. 368. Mr. Justice Cardozo stated in the cited case: "If the failure to give maintenance or cure has caused or aggravated an illness, the seaman has his right of action for the injury thus done to him; the recovery in such circumstances including not only necessary expenses, but also compensation for the hurt." Cf. Graham v. Alcoa S.S. Co., 3 Cir., 1953, 201 F.2d 423.

For these reasons I respectfully dissent from the order denying rehearing.